**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ANTON THURMAN MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25cv14 |
| | ) | |
| NAPH CARE/BRAD MCLANE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on a Motion for Summary Judgment filed by Defendants Naph Care/Brad McLane, Dr. Strickland, and Dr. Box (collectively, Defendants) (Docket Entry 31). (See Docket Entry dated Jan. 30, 2026 (referring Docket Entry 31).) Because Defendants have not established entitlement to judgment as a matter of law based on the record facts viewed in the light most favorable to Plaintiff, the Court should deny the instant Motion.

## INTRODUCTION

Plaintiff commenced this action by filing a pro se Complaint against Defendants and others under 42 U.S.C. § 1983 (see Docket Entry 2 at 1-3),[1] seeking solely monetary relief (see id. at 16), based on events that occurred during Plaintiff's pretrial detention in the Forsyth County jail "from December 7, 2023 to February 24,

---

1 Pin cites to the Complaint refer to the page numbers that appear in the footer appended to the Complaint upon its docketing in the CM/ECF system (rather than to any internal pagination).

2024" (id. at 6).[2] Plaintiff included in the Complaint (as concerns Defendants) a claim for violation of his "[r]ights to medical care/dental care [under the] 8th Amendment, 14th Amendment" (id. at 3),[3] based on these factual allegations against Defendants:

1) Defendant Naph Care/McLane "acted under color of state or local laws as a medical/mental health provider for the county jail of Forsyth" (id. at 7; see also id. at 2 (describing McLane as "CEO" of Naph Care)), but "fail[ed] to cure the gravamen of [Plaintiff's] medical problem after more than 3 visits, and many more sick calls" (id. at 7), from which "[Defendant] Naph Care[/McLane's] employees was [sic] clearly aware of the infections, broken teeth, puss [sic] filled pockets, red-swollen gums and aching teeth in [Plaintiff's] mouth which prevented [him] from eating regularly and healthy" (id. at 11);

2) Defendant Naph Care/McLane "employed those who failed to attempt a reasonable medical/dental practice that would elivate [sic] the excruciating pains and infections which occurred since

---

2 Public records confirm Plaintiff's conviction date in Forsyth County as February 27, 2024. See https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (results for "Anton T. McAllister") (last visited July 24, 2026).

3 Quotations from Plaintiff's filings utilize standard capitalization conventions. Because the Complaint identifies "Naph Care - Brad McLane" as one Defendant (Docket Entry 2 at 2) and the Court limited the action as against said Defendant to an official capacity claim (see Docket Entry 7 at 1), this Recommendation generally uses the name "Defendant Naph Care/McLane" for said Defendant (including by altering quotations as noted but leaving "NaphCare" as one word when it so appears in the record).

[Plaintiff] ha[s] been under [Defendant Naph Care/McLane's] care" (id. at 7; see also id. at 11 ("[Defendant] Naph Care[/McLane's] dental policies and employees did not resolve the gravamen of [Plaintiff's] health pain problems deliberately and from that day forward [he] ha[s] continued to suffer excruciating pains unnecessarily. . . . As of May 2024[, Plaintiff] had to get over 20 teeth pulled due to infection."));

3) Defendant Strickland "acted under color of state and local laws as a provider for . . . [the Forsyth County jail] who knowingly and willfully denied [Plaintiff] as a dental patient the right to be free from excruciating pain and suffering without any further consideration or referral to someone more qualified" (id. at 7; see also id. at 2 (identifying Defendant Strickland as "dentist (on site)" employed by Defendant Naph Care/McLane)), despite "full[] aware[ness] of the infectious problems which caused [Plaintiff] unnecessary agony and continuous pain" (id. at 7);

4) "[Defendant] Strickland pulled 2 back broken teeth although she clearly acknowledge [sic] other broken teeth that [Plaintiff] even pointed out to her and she deliberately avoided providing maximum care for them - not even an offer of special tooth paste or mouth wash" (id. at 11; see also id. at 16 (alleging that Plaintiff "went to the dentist after about a month and a week, which is when [Defendant] Strickland only pulled 2 broken teeth and did nothing to cure the bleeding, aching or infections in [Plaintiff's] mouth

– while also leaving numerous of other broken and damaged teeth to continue causing [him] extremely crucial pains and suffering”)), notwithstanding (A) Defendant Strickland’s “acknowledg[ment of] the rank odor from blood and infection coming from every tooth and [Plaintiff’s] gums which [we]re discolored (pale purple-black-red) and swollen” (id. at 11) and (B) his “clear[] expla[nation] to her [about] the extreme pain [he] was suffering” (id.);

5) Defendant Strickland “showed no urgency about the matter” (id.), “said that she would not schedule [Plaintiff] an outside appointment with another dental clinic when she rejected [his] purposal [sic] to cure the sole problem which was the bleeding and infections which she said came from gum diseases” (id.), and “clearly stated that she . . . do[es] not clean teeth and [Plaintiff] would have to handle that issue (which causes harmful gum disease) when [he] get[s] out of jail” (id.);

6) Defendant Box (A) “acted under color of state and local laws by being a high ranked representative for [Defendant] Naph Care[/McLane as a] medical provider” (id. at 7; see also id. at 3 (identifying Defendant Box as “physician” employed by Defendant Naph Care/McLane)), and (B) “acknowledge[d Plaintiff’s] excruciating pains and suffering yet [Defendant Box] did nothing more than unurgently [sic] offer[ing Plaintiff] salt packets to tighten [his] gums although the salt was knowingly to no effect on the infections throughout [his] entire mouth” (id. at 7-8; see also

id. at 8 (alleging that Defendant Box "deliberately avoided reasonable medical care or to advocate for [Plaintiff] as a pretrial detainee"), 12 ("[Defendant] Box as a physician was aware of the harm of swallowing infections, blood and large quantities of food at a time – yet did nothing to offer a cure. He said that [Plaintiff's] issue was a dental concern and offered no further professional medical care to [Plaintiff]."')).

At the screening stage, "[P]laintiff's official capacity claim against Defendant Naph Care/McLane, official and individual capacity claims against Defendant Strickland, and individual capacity claim against Defendant Box [we]re allowed to proceed" (Docket Entry 7 at 1), but "[a]ll other claims in the Complaint [we]re dismissed for failure to state a claim" (id. (all-caps and bold font omitted)).[4] Defendants thereafter filed their Answer

---

4 In so ordering, the Court (per Chief United States District Judge Catherine C. Eagles) "adopt[ed] the [undersigned] Magistrate Judge's [screening r]ecommendation." (Docket Entry 7 at 1 (adopting Docket Entry 3).) That recommendation explains that "the Complaint contains sufficient facts to state a claim for deliberate indifference against Defendants Strickland and Box in their individual capacities" (Docket Entry 3 at 5), by alleging "that they actually provided treatment to Plaintiff and that[,] despite knowledge of the ineffectiveness of that treatment, they did not otherwise treat him or refer him for outside treatment" (id.). Additionally, that recommendation deems the following allegations adequate to allow official capacity claims against Defendants Naph Care/McLane and Strickland to proceed: "Defendant Strickland allegedly told Plaintiff that he needed to have his teeth cleaned in order to get relief from his symptoms. However, she refused to clean them or to refer him for cleaning and stated that [Defendant] Naph Care[/McLane] does not clean teeth." (Id.; see also id. (noting that said allegations support inference that, in refusing (continued...)

(Docket Entry 16), in which (among other things) they "den[ied] that they deprived Plaintiff of any right under the Constitution" (id. at 6) and asserted that "[q]ualified immunity shields [them] from [his] claims against them for monetary damages" (id. at 7).

The Court (per the undersigned Magistrate Judge) then "adopt[ed a] Scheduling Order" (Text Order dated May 27, 2025), authorizing discovery through November 24, 2025 (see id.). On December 23, 2025, Defendants timely filed the instant Motion (Docket Entry 31) and supporting memorandum (Docket Entry 32). See M.D.N.C. LR 56.1(b) (mandating that, absent contrary order, "dispositive motions and supporting briefs must be filed within 30 days following the close of the discovery period").[5] Via letter dated December 30, 2025, the Clerk notified Plaintiff of his "right to file a 20-page response in opposition to the [instant M]otion[]" (Docket Entry 33 at 1), as well as "affidavits setting out [his] version of any relevant disputed material facts or . . . other

4(...continued)
such care, Defendant Strickland "act[ed] according to [Defendant] Naph Care[/McLane's] policy" but that "the Complaint contains no allegations supporting an official capacity claim against Defendant Box or individual capacity claims against Defendant Naph Care/ McLane").) Hence, to the extent Plaintiff premised his Section 1983 claims on his purported rights to "[p]rotection against 'risk' of infectious disease"(Docket Entry 1 at 3) and "[p]rotection against risk of worser [sic] health condition" (id.), he now may vindicate those rights only via his surviving individual capacity and official capacity claims for medical/dental care-related "deliberate indifference" (Docket Entry 3 at 5).

5 Defendants served both documents on Plaintiff by mail that same day. (See Docket Entry 31 at 3; Docket Entry 32 at 24.)

responsive material" (id.; see also id. ("A response to a [m]otion for [s]ummary [j]udgment must be filed within 30 days from the date of service on you.")).[6] That letter cautioned Plaintiff that a "failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [ D]efendants' contentions are undisputed and/or that [he] no longer wish[es] to pursue the matter." (Id. (emphasis added) (parenthesis omitted).)

On February 3, 2026, the Clerk docketed Plaintiff's Response and Brief in Opposition to Defendant's Motion for Summary Judgment (Docket Entry 34 (the "Response")). (See id. at 1.) Plaintiff dated the Response as signed (under penalty of perjury) on January 18, 2026. (See id. at 14.) Defendant promptly replied, arguing only that "[t]he Court should not consider [the] Response given that it is untimely and was filed after the established deadline for such a response." (Docket Entry 35 (the "Reply") at 1.)[7]

---

6 That response time-limit comes from the Court's Local Rules. See M.D.N.C. LR 56.1(e) ("In a responsive brief the party having made the challenged claim may, within 30 days after service of the summary judgment motion and brief, file with the Court a response that . . . sets out the elements that it must prove . . . and the specific, authenticated facts existing in the record or set forth in accompanying affidavits that would be sufficient to support a jury finding of the existence of the disputed elements.").

7 By Local Rule, "[i]f a respondent fails to file a response [to a motion] within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). However, "the [C]ourt, in considering a motion for summary (continued...)

## DISCUSSION

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering summary judgment, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Put another way, the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal brackets and quotation marks omitted). If, applying that standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); see also Anderson, 477 U.S. at 248 ("Only disputes over

---

7(...continued)
judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

As detailed in the Introduction, Plaintiff has asserted claims for violation of his "[r]ights to medical care/dental care [under the] 8th Amendment, 14th Amendment" (Docket Entry 2 at 3), which the Court allowed to proceed against Defendants under the short-hand "deliberate indifference" (Docket Entry 3 at 5; see also Docket Entry 7 at 1 (adopting Docket Entry 3)). Such claims rest on the following foundation: "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989); see also Thompson v. Virginia, 878 F.3d 89, 97 (4th Cir. 2017) ("The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including . . . failing to render medical assistance."). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . medical care . . .[,] it transgresses the substantive limits on state action set by the Eighth Amendment [in the case of convicted prisoners] and the Due Process Clause [of the Fourteenth Amendment in the case of pretrial detainees]." DeShaney, 489 U.S.

at 200; see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) ("Because [the plaintiff] was a pretrial detainee and not a convicted prisoner at the time of the alleged denial, [his] claim [for denial of medical care] is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment.").[8]

Per the instant Motion, "summary judgment in Defendants' favor is warranted for the following reasons" (Docket Entry 31 at 1):

> (1) Plaintiff cannot demonstrate [A] that [Defendant] NaphCare[/McLane] had a policy or custom that caused its providers to be deliberately indifferent to a serious medical need of Plaintiff, or [B] that such indifference was the proximate cause of any injury to Plaintiff; and (2) Defendants are entitled to qualified immunity from civil damages with respect to Plaintiff's specific claims against Defendants in this action.

(Id. at 1-2 (emphasis added).) Defendants' supporting memorandum departs from that formulation by offering these argument groupings:

8 In this context, medical care includes dental care. See, e.g., Formica v. Aylor, 739 F. App'x 745, 756 (4th Cir. 2018) (recognizing that "degenerative dental condition, which resulted in . . . infect[ion] . . ., constitutes a serious medical condition"); Mallette v. Dunning, No. 88-6861, 896 F.2d 546 (table), 1990 WL 12738, at *1 (4th Cir. Jan. 24, 1990) (unpublished) ("Deliberate indifference to dental needs has been the basis of successful statements of claims of eighth amendment violations."); Graves v. White, C/A No. 1:24-3233, 2025 WL 476222, at *7 (D.S.C. Jan. 21, 2025) (unpublished) ("[I]t has been clearly established that the Constitution requires prisoners to receive medical care necessary to address their serious medical needs, including dental care." (internal citation omitted)), recommendation adopted, 2025 WL 475132 (D.S.C. Feb. 11, 2025) (unpublished).

1) "Plaintiff cannot meet the required deliberate indifference standard" (Docket Entry 32 at 9);[9]

2) "[Defendant] NaphCare[/McLane] did not maintain an official policy or custom resulting in deliberate indifference to a serious medical need of Plaintiff" (id. at 12 (emphasis added));

3) "[i]t is undisputed that [Defendant] NaphCare[/McLane] was not deliberately indifferent to any serious medical needs of Plaintiff" (id. at 14);

4) "[Defendant] Strickland was not indifferent to any serious medical needs of Plaintiff" (id. at 18);

5) "[Defendant] Box was not indifferent to any serious medical needs of Plaintiff" (id. at 19); and

6) "Defendants are entitled to qualified immunity" (id. at 20 (emphasis added)).

Specifically, although the final ground for summary judgment listed in the instant Motion (raising qualified immunity) corresponds to the sixth argument grouping in Defendants' supporting memorandum (likewise raising qualified immunity) (compare Docket Entry 31 at 2, with Docket Entry 32 at 20), and the first of the two parts of the initial ground for summary judgment listed in the instant Motion (raising the policy/custom requirement for entity/official capacity liability) corresponds to the second

9 This quotation (and the five that follow) apply standard capitalization conventions and omit bold font (here and hereafter).

argument grouping in Defendants' summary judgment brief (likewise raising that policy/custom requirement) (compare Docket Entry 31 at 1, with Docket Entry 32 at 12), the remaining four argument groupings in Defendants' supporting memorandum contest Plaintiff's proof that Defendants' acts/omissions amounted to deliberate indifference to his serious medical/dental needs (but elide the issue of whether he can prove that any such deliberate indifference proximately caused his alleged injuries) (see Docket Entry 32 at 9, 14, 18, 19),[10] whereas the second of the two parts of the initial ground for summary judgment listed in the instant Motion contests Plaintiff's proof that any deliberate indifference by Defendants to his serious medical/dental needs proximately caused his alleged injuries (but, like the first part of that ground, elides the issue of whether Defendants' acts/omissions amounted to such deliberate indifference) (see Docket Entry 31 at 1).

Beyond that misalignment between the summary judgment grounds identified by Defendants in the instant Motion and the arguments they presented in their supporting memorandum, Defendants mistakenly have framed Plaintiff's claim for deliberate indifference to his serious medical needs during his pretrial detention as governed by standards applicable under the Eighth Amendment rather than the Fourteenth Amendment. (See, e.g., Docket

10 In fact, Defendants' supporting memorandum only mentions proximate cause once, in the context of Defendant Naph Care/ McLane's policies, not Defendants Box's and/or Strickland's individual capacity liability. (See Docket Entry 32 at 14.)

Entry 32 at 9-12.) In years past, that mistake would have lacked any practical significance, because: (A) after "the Supreme Court finally adopted a test for Eighth Amendment deliberate indifference claims in *Farmer v. Brennan*[,] 511 U.S. 825 (1994)," Short v. Hartman, 87 F.4th 593, 606-07 (4th Cir. 2023) (parallel citations omitted); see also id. at 607 ("That test is subjective[.]"), "a consensus emerged among the courts of appeal[s] that *Farmer*'s subjective Eighth Amendment standard applied to Fourteenth Amendment claims," id. at 607; and (B) "[the United States Court of Appeals for the Fourth Circuit], too, extended *Farmer* to Fourteenth Amendment claims," id.; see also Brown v. Harris, 240 F.3d 383, 388 n.6 (4th Cir. 2001) (reaffirming "that the same 'deliberate indifference' standard applies to both inmates and pretrial detainees"). However, the Fourth Circuit since has held that "the heightened, subjective Eighth Amendment deliberate indifference standard does not extend to Fourteenth Amendment cases," Short, 87 F.4th at 609. See id. at 609-11.

To replace the Eighth Amendment standard, the Short Court adopted this four-element test for a Fourteenth Amendment "claim for deliberate indifference to a medical need," id. at 611:

> (1) the[ plaintiff] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the [plaintiff] had that condition and (b) that the defendant's action or inaction posed an

> unjustifiably high risk of harm; and (4) as a result, the [plaintiff] was harmed.

Id. The Short Court thereafter explained:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the [plaintiff's] serious medical condition and consciously disregarded the risk that [the defendant's] action or failure to act would result in harm. . . . Now, it is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly.

Id. (internal citations and quotation marks omitted).

In arguing that "Plaintiff cannot meet the required deliberate indifference standard" (Docket Entry 32 at 9), "that [Defendant] NaphCare[/McLane] was not deliberately indifferent to any serious medical needs of Plaintiff" (id. at 14), that "[Defendant] Strickland was not indifferent to any serious medical needs of Plaintiff" (id. at 18), and that "[Defendant] Box was not indifferent to any serious medical needs of Plaintiff" (id. at 19), Defendants did not apply the facts of this case – which, as the Introduction documents, arose after Plaintiff entered the Forsyth County jail on December 7, 2023, and while he remained there as a pretrial detainee through February 27, 2024 – to the above-quoted elements for a claim of deliberate indifference under the Fourteenth Amendment, as announced by the Fourth Circuit on December 8, 2023, see Short, 87 F.4th at 594. (See Docket Entry 32 at 9-12, 14-20.) Instead, Defendants relied exclusively on pre-

Short case law addressing the standard for claims under the Eighth Amendment, i.e., Farmer's subjective standard. (See id. at 9-12.)

To sum up, because (A) the instant Motion does not request summary judgment based on a failure of proof that Defendants' acts/omissions amounted to deliberate indifference to Plaintiff's medical/dental needs (under any standard), and (B) Defendants' supporting memorandum does not develop any argument about whether their acts/omissions amounted to such deliberate indifference under the proper standard, the Court should not enter summary judgment for Defendants on the premise that the record forecloses a finding that their acts/omissions amounted to deliberate indifference to Plaintiff's medical/dental needs. See Shaughnessy v. Duke Univ., No. 18CV461, 2020 WL 4227545, at *6 (M.D.N.C. July 23, 2020) (unpublished) (Eagles, J.) (ruling that "[the defendant] ha[d] not met its initial burden to show that it [wa]s entitled to summary judgment," where it "d[id] not explain why the evidence [wa]s insufficient to support a jury verdict on any particular element or elements [of the claims at issue]"); see also M.D.N.C. LR 7.3(b) ("All motions shall state with particularity the grounds therefor . . . ."); M.D.N.C. LR 56.1(e) (requiring party moving for summary judgment on opposing party's claim to "set out the elements that the claimant must prove (with citations to supporting authority), and explain why the evidence is insufficient to support a jury verdict on an element or elements, or why some other rule of law

would defeat the claim"); Hill v. Carvana, LLC, No. 1:22CV37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) (unpublished) (Eagles, J.) ("It is not the Court's job to undertake the analysis and legal research needed to support a perfunctory argument, nor should a party expect [the C]ourt to do the work that [the party] elected not to do." (internal citation and quotation marks omitted)).[11]

Alternatively, if the Court chose to look past the foregoing shortcomings on the face of the instant Motion and Defendants' supporting memorandum and to superimpose their arguments (analyzing the elements for claims under the Eighth Amendment) against the elements adopted in Short (for claims under the Fourteenth Amendment), the Court still should deny summary judgment based on those arguments, because (A) they rely on "opinions of Defendants' retained experts Dr. Dovgan and Dr. Fowlkes [to] demonstrate that Defendants acted appropriately and reasonably with respect to Plaintiff's healthcare" (Docket Entry 32 at 9; see also, e.g., id. at 12 (relying on "opinions expressed in Dr. Dovgan's and Dr. Fowlkes's reports[ to] establish that there is no genuine dispute as to any material fact in this case related to the appropriateness of Plaintiff's dental and other care"), 16-17 (citing reports of

11 Based on the above-cited authority, the Court similarly should deny the instant Motion's request for summary judgment on the ground that "Plaintiff cannot demonstrate . . . that [Defendant Box's and/or Defendant Strickland's deliberate] indifference was the proximate cause of any injury to Plaintiff" (Docket Entry 31 at 1), as Defendants' supporting memorandum does not develop any such proximate-cause-based argument (see Docket Entry 32 at 8-21).

Drs. Dovgan and Fowlkes to show that "Defendants' actions were appropriate and well within the standard of care"), 18-20 (citing reports of Drs. Dovgan and Fowlkes to show that "Dr. Strickland appropriately treated Plaintiff and responded to his dental needs" and that "[a]ll of Dr. Box's actions therefore were appropriate and were within the standard of care")), but (B) Defendants failed to include those reports with their supporting memorandum (see Docket Entry 32-2 (Declaration of Dr. Fowlkes describing his report as "attached as Exhibit B" but omitting any such attachment); Docket Entry 32-3 (Declaration of Dr. Dovgan describing his report as "attached as Exhibit B" but omitting any such attachment); see also Docket Entry 31 (including no attachments)). See M.D.N.C. LR 7.2(a)(2) (providing that, in briefs, "[e]ach statement of fact should be supported by reference to a part of the official record in the case"); M.D.N.C. LR 7.3(e) ("When allegations of facts not appearing of record are relied upon to support a motion, affidavits, parts of depositions, and other pertinent documents then available shall accompany the motion or related brief."); Jiangmen Kinwai Furniture Decoration Co. Ltd. v. IHFC Props., LLC, No. 1:14CV689, 2015 WL 5098791, at *2 n.2 (M.D.N.C. Aug. 31, 2015) (unpublished) (Eagles, J.) ("[T]he Court does not consider statements of fact in briefs to be evidence unless they are supported by citation to evidence of record."), aff'd in part and vacated in part on other grounds, 780 F. App'x 1 (4th Cir. 2019).

Upon "determin[ing] that Plaintiff's [individual capacity] claims against [Defendants Box and Strickland] should go forward [on the merits, the Court] must address Defendants' argument that [Defendants Box and Strickland] are entitled to qualified immunity." Scinto v. Stansberry, 841 F.3d 219, 235 (4th Cir. 2016).[12] "[Q]ualified immunity shields government officials from liability for civil damages for the deprivation of federal rights so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

12 Qualified immunity does not provide a defense to Plaintiff's official capacity claims against Defendant Naph Care/ McLane and Defendant Strickland. See, e.g., Benton v. Layton, No. 3:22CV225, 2022 WL 4274121, at *4 (E.D. Va. Sept. 15, 2022) (unpublished) ("[A]n official sued in his personal capacity may raise personal immunity defenses such as absolute or qualified immunity, however, these types of immunity are unavailable for an official sued in his official capacity."); Sallie v. Tax Sale Investors, Inc., 998 F. Supp. 612, 621 (D. Md. 1998) ("[S]ince the qualified immunity defense does not extend to municipal corporations or to claims against state actors in their official capacities, it cannot be expected that the Supreme Court will allow a private business corporation, as distinct from its officers and employees, to claim the benefits of qualified immunity." (internal citations and emphasis omitted)); see also Brandon v. Holt, 469 U.S. 464, 473 (1985) (reiterating "that a municipality is not entitled to the shield of qualified immunity from liability under [Section] 1983"); Atkinson v. Godfrey, 100 F.4th 498, 509 (4th Cir. 2024) ("Official capacity suits are treated as suits against the municipality, so qualified immunity does not apply to such claims. . . . [C]laims against municipalities are measured against current law, without regard to whether municipalities' obligations were clearly established at the time of the alleged violations." (internal citations and quotation marks omitted)); Kerr v. McKay, No. 2:20CV190, 2020 WL 8484879, at *4 (S.D. W. Va. Aug. 17, 2020) (unpublished) ("[B]ecause [the defendant] is an entity, and not an individual, it cannot assert a federal qualified immunity defense."), adopted in relevant part, 2020 WL 7706514 (S.D. W. Va. Dec. 29, 2020) (unpublished).

would have known." Tarashuk v. Givens, 53 F.4th 154, 162 (4th Cir. 2022) (internal quotation marks omitted). Government officials thus enjoy "qualified immunity unless [they] (1) violated a federal statutory or constitutional right, and (2) the unlawfulness of [their] conduct was clearly established at the time." Hulbert v. Pope, 70 F.4th 726, 732 (4th Cir. 2023) (internal quotation marks omitted). "If [the plaintiff] fails at either prong, [the defendant-government officials are] entitled to summary judgment." Amisi v. Brooks, 93 F.4th 659, 666 (4th Cir. 2024).[13]

Defendants' entire argument for summary judgment based on qualified immunity consists of an opening paragraph summarizing the (above-noted) two-part test (see Docket Entry 32 at 20-21) followed by these two paragraphs applying that test to this case:

> As set forth above, Defendants demonstrate that they provided Plaintiff with competent and sufficient medical care. Plaintiff cannot overcome this showing and therefore cannot establish the required elements of a [Section] 1983 deliberate indifference action against Defendants. There is no decision from the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court "clearly establishing" that an inmate has a purported constitutional right to choose his course of treatment or dictate the timing of the provision of diagnostic measures or specialty care. Plaintiff also cannot show that a disagreement with his treatment plan constituted deliberate indifference towards a serious medical need.

---

13 Although the plaintiff must prevail on both prongs of the test for qualified immunity to avoid summary judgment, the Fourth Circuit has adopted "a split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the [defendant] bears the burden on the second prong." Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022).

> There is nothing to show that Defendants, and every other "reasonable official," would have known that such conduct was unlawful at the time of the challenged conduct here. Thus, Plaintiff cannot show a constitutional violation. The evidence demonstrates that Defendants acted reasonably in their treatment of [] Plaintiff, and that they did not violate any clearly established constitutional right. Defendants are, therefore entitled to qualified immunity.

(Id. at 21 (emphasis added).)

Starting with the first prong of the test for qualified immunity, i.e., whether Defendants Box and Strickland "violated a federal statutory or constitutional right," Hulbert, 70 F.4th at 732 (internal quotation marks omitted), Defendants merely reincorporated what their supporting brief "set forth above" (Docket Entry 32 at 21), to show "that they provided Plaintiff with competent and sufficient medical care" (id.; see also, e.g., id. at 9 (arguing that "Defendants acted appropriately and reasonably with respect to Plaintiff's healthcare"), 17 (arguing "that Defendants' actions were appropriate and well within the standard of care"), 19 (arguing that "[Defendant] Strickland appropriately treated Plaintiff"), 20 ("All of [Defendant] Box's actions . . . were within the standard of care.")). Based on that showing, Defendants would have the Court conclude that Plaintiff "cannot establish the required elements of a [Section] 1983 deliberate indifference action" (id. at 21; see also id. ("Plaintiff cannot show a constitutional violation. The evidence demonstrates that Defendants acted reasonably in their treatment of [] Plaintiff

. . . .")); however, as previously explained, the supporting brief's (reincorporated) arguments (A) fail to address the correct "required elements of a [Section] 1983 deliberate indifference action" (id.), and (B) rely on evidence from Drs. Dovgan and Fowlkes that Defendants neglected to make part of the record. Due to those fundamental failings, Defendants have not "show[n] that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), on the question of whether Defendants Box and Strickland "violated a federal statutory or constitutional right," Hulbert, 70 F.4th at 732 (internal quotation marks omitted). As a result, Defendants Box and Strickland cannot secure summary judgment via the first prong of the qualified immunity test.

Turning to the second prong of that test, i.e., whether "the unlawfulness of [Defendants Box's and Strickland's alleged] conduct was clearly established at the time," Hulbert, 70 F.4th at 732 (internal quotation marks omitted), Defendants misconstrue Plaintiff's surviving claim by insisting that he must (but cannot) identify controlling precedent "'clearly establishing' that an inmate has a purported constitutional right to choose his course of treatment or dictate the timing of the provision of diagnostic measures or specialty care" (Docket Entry 32 at 21) and "that a disagreement with his treatment plan constituted deliberate indifference" (id.). As the screening recommendation (adopted by Chief Judge Eagles) documents, Plaintiff actually asserted a claim

that Defendants Box and Strickland violated the Fourteenth Amendment's prohibition against deliberate indifference to Plaintiff's serious medical needs when, "despite knowledge of the ineffectiveness of th[eir] treatment [for his broken/infected teeth and infected gums], they did not otherwise treat him or refer him for outside treatment" (Docket Entry 3 at 5), including as evidenced by Defendant Strickland telling "Plaintiff that he needed to have his teeth cleaned in order to get relief from his symptoms" (id.), but "refus[ing] to clean them or to refer him for cleaning" (id.) because "[Defendant] Naph Care does not clean teeth" (id.; see also, e.g., Docket Entry 2 at 7-8 (alleging that Defendant Box "acknowledge[d Plaintiff's] excruciating pains and suffering yet [Defendant Box] did nothing more than unurgently [sic] offer[ing Plaintiff] salt packets to tighten [his] gums although the salt was knowingly to no effect on the infections throughout [his] entire mouth"), 11 (alleging that "[Defendant] Strickland pulled 2 back broken teeth" but declined to provide any further treatment despite "acknowledg[ing] other broken teeth that [Plaintiff] even pointed out to her" and "also acknowledg[ing] the rank odor from blood and infection coming from every tooth and [his] gums which [we]re discolored . . . and swollen")).

Simply put, rather than addressing Plaintiff's actual claim, Defendants "unfairly reduce[] his case to a straw man." Casciaro v. Allmen, No. 17C50094, 2021 WL 1626879, at *17 (N.D. Ill. Mar.

26, 2021) (unpublished). The Court should not grant them summary judgment based on such an argument. See, e.g., Younger v. Crowder, 79 F.4th 373, 386-87 (4th Cir. 2023) ("[I]t was clearly established in 2013 that [the defendant-warden's] inaction [to protect the plaintiff-inmate] amounted to unconstitutional deliberate indifference. [The defendant-warden] seeks to avoid this conclusion by recasting the issue as a right to receive a transfer. . . . He points to caselaw to argue that there is no clearly established right to a transfer, and so claims that he must be afforded qualified immunity. . . . [The defendant-warden] mischaracterizes [the plaintiff-inmate's] allegation and misses the point . . . . [The defendant-warden] is not entitled to qualified immunity."); Sanabria v. Brackett, Civ. Action No. 22-1012, 2024 WL 4827320, at *12 n.18 (D. Del. Nov. 19, 2024) (unpublished) (rejecting the defendants' argument that, "even if [the p]laintiff pointed to sufficient evidence to withstand summary judgment as to the elements of [deliberate indifference] claim, the [c]ourt should nevertheless grant summary judgment on qualified immunity grounds," because, in making that argument, "[the d]efendants seemed to be fighting against a straw man" by misframing the plaintiff's claim rather than addressing whether his actual claim involved alleged violation of "clearly established right"), appeal filed, No. 25-1091 (3d Cir. Jan. 16, 2025).

But then how should the Court decide whether "the unlawfulness of [Defendants Box's and Strickland's alleged] conduct was clearly established at the time," Hulbert, 70 F.4th at 732 (internal quotation marks omitted)? "To determine whether the right [they allegedly violated] was clearly established, [the Court] first must define the right at issue." Scinto, 841 F.3d at 235; see also, e.g., Pfaller v. Amonette, 55 F.4th 436, 445 (4th Cir. 2022) ("[A] court must pinpoint the precise constitutional right at issue in order to determine whether it was clearly established."). "That task sounds simple enough, but, in fact, it's a tall order," Dorfman on behalf of MGP Ingredients, Inc. v. Griffin, No. 20-2239, 2021 WL 1209734, at *7 (D. Kan. Mar. 31, 2021) (unpublished), because, "[u]nfortunately, the devil is in the definition," In re Bulson, 327 B.R. 830, 839 (Bankr. W.D. Mich. 2005).

For starters, "the Court[] must take care to define the right at an 'appropriate level of specificity.'" Thompson, 878 F.3d at 98 (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). And, according to the Fourth Circuit, the "appropriate level of specificity," id. (internal quotation marks omitted), varies depending on the constitutional provision at issue, see, e.g., Pfaller, 55 F.4th at 445 ("Eighth Amendment claims don't require the same level of specificity that is needed in, for example, the Fourth Amendment context."). Nevertheless, "even [when considering claims under constitutional provisions that require less

specificity, courts] must define the right in light of the specific context of the case, not as a broad general proposition." Younger, 79 F.4th at 385 (internal quotation marks omitted)); see also Pfaller, 55 F.4th at 445 (acknowledging, in Eighth Amendment case, that "court[s] must be careful not to define the right at a high level of generality because the dispositive question is whether the violative nature of particular conduct is clearly established" (internal brackets, emphasis, and quotation marks omitted))).

Notwithstanding (A) that last (fairly recent) directive from the Fourth Circuit to avoid (in all cases) defining a constitutional right for purposes of qualified immunity analysis "as a broad general proposition," Younger, 79 F.4th at 385, and (B) the fact that "[t]he Supreme Court has repeatedly stated courts should not examine clearly established law at too high a level of generality," id., in the context of medical care-related claims of deliberate indifference (like Plaintiff's), the Fourth Circuit consistently (and very recently) has embraced an undeniably broad "defin[ition of] the right at issue," Scinto, 841 F.3d at 235. See Rhoads v. Riddell, 180 F.4th 171, 179-80 (4th Cir. 2026) (noting that "right must not be defined at a high level of generality but with precision" and then holding as follows: "Here, the district court defined the right at issue as a pretrial detainee's Fourteenth Amendment right to receive adequate medical care and to be free from deliberate indifference to their known medical needs.

This definition has repeatedly been found by this circuit as sufficiently precise. Therefore, we conclude the district court properly defined the right at issue." (internal citation omitted) (citing Tarashuk, 53 F.4th at 164, and Scinto, 841 F.3d at 236); see also Pfaller, 55 F.4th at 452-53 ("The district court held that the right at issue is [the plaintiff's] Eighth Amendment right to receive adequate medical care and to be free from officials' deliberate indifference to his known medical needs. This, [the defendant-doctor] argues, is far too general. Instead, he proffers that the proper inquiry is whether it would have been clear to [the defendant-doctor] that he was providing inadequate medical care in violation of the Eighth Amendment by failing to schedule a specific type of follow-up test . . . . We disagree with [that] overly narrow articulation." (internal citations and quotation marks omitted)); but see Rhoads, 180 F.4th at 185 (Rushing, J., concurring in the judgment) ("The majority's definition of the right at issue is too general. It does not take into account the specific context of this case. Nor is it in any way particularized to the facts presented in the district court. Instead, the majority's definition merely restates a general constitutional principle, formulated at the high level of generality the Supreme Court has repeatedly cautioned against." (internal brackets, citations, and quotation marks omitted)).

To respect the Fourth Circuit's clear prior ruling on the same basic question presented here, the Court (in assessing Defendants Box's and Strickland's defense of qualified immunity) should "define[] the right at issue as [Plaintiff's] Fourteenth Amendment right to receive adequate medical care and to be free from deliberate indifference to [his] known medical needs," Rhoads, 180 F.4th at 180. "Having defined the right at issue, [the Court next] must determine whether the law at the time of the challenged conduct was sufficiently clear such that every reasonable official would have understood that what he was doing violates that right." Id. (internal brackets and quotation marks omitted). Again, the Fourth Circuit has directly answered that question: "A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and th[e Fourth] Circuit since at least 1976 and, thus, was clearly established at the time of the events in question." Scinto, 841 F.3d at 236; accord, e.g., Pfaller, 55 F.4th at 453; see also City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) ("[T]he due process rights of a person in [pretrial detention] are at least as great as the Eighth Amendment protections available to a convicted prisoner."); Rhoads, 180 F.4th at 182 ("[B]efore December 2023, when *Short* was issued, it was already clearly established that a pretrial detainee had a right to

adequate medical care and the right to be free from deliberate indifference of a detainee's serious medical needs.").[14]

In conclusion (as to qualified immunity), the record does not show that Plaintiff "fails at either prong [of the applicable test

---

14 "[T]he unlawfulness of [Defendants Box's and Strickland's alleged] conduct was clearly established at the time," Hulbert, 70 F.4th at 732 (internal quotation marks omitted), even if the Court defines the constitutional right at issue less expansively, "in light of the specific context of the case," Younger, 79 F.4th at 385 (internal quotation marks omitted), as summarized in the screening recommendation (see Docket Entry 3 at 4-5). See, e.g., Rhoads, 180 F.4th at 183 ("As [the Fourth Circuit] concluded [in Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987)], the law at th[at] time established that government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs, particularly where continued complaints or manifest symptoms would have put [the] defendants on notice that additional care was required." (internal brackets, ellipses, and quotation marks omitted)); Pfaller, 55 F.4th at 453 ("As [the plaintiff's] treating physician, [the defendant-doctor] was on notice at all relevant times – late 2015 through 2018 – that he could not choose to delay or withhold treatment from [the plaintiff] when [the defendant-doctor] knew it was medically necessary . . . ."), 454 ("Likewise, [the defendant-doctor] was on notice that providing some care – even if unreasonable and deficient – does not clear the constitutional bar." (emphasis omitted) (citing Jehovah v. Clarke, 798 F.3d 169, 181-82 (4th Cir. 2015))); see also Pfaller, 55 F.4th at 446 ("[A] prison doctor[ ] doesn't need case law to tell him his patient deserves fair treatment."), 453 ("[C]learly established law doesn't require identical facts. None of the [Fourth Circuit's prior] cases, of course, dealt with the precise issue [of the plaintiff's particular] treatment. But requiring such specificity in the case of a treatment provider's decisions would allow a doctor limitless opportunity to deny medical care unless the precise required treatment for a specific underlying illness had been addressed by [the Fourth Circuit]. We decline to distort qualified immunity into such an absolute immunity."); Scinto, 841 F.3d at 236 ("There is no requirement that the very act in question must have previously been held unlawful for a reasonable official to have notice that his conduct violated [a constitutional] right." (internal brackets and quotation marks omitted)).

and thus Defendants Box and Strickland are not] entitled to summary judgment [based on that defense]," Amisi, 93 F.4th at 666.[15]

The foregoing discussion leaves for analysis only Defendants' request for summary judgment on Plaintiff's official capacity claims against Defendants Naph Care/McLane and Strickland on the ground that "Plaintiff cannot demonstrate that [Defendant] NaphCare[/McLane] had a policy or custom that caused its providers to be deliberately indifferent to a serious medical need of Plaintiff" (Docket Entry 31 at 1 (emphasis added)). "[That] analysis [should] begin[] with [a review of] general principles of [local government] liability." Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999). First, "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992) (quoting 42 U.S.C. § 1983). And "Congress intended . . . local government entities to be included among those persons to whom [Section] 1983

15 The Court additionally may take note of the substantial body of persuasive authority "hold[ing] that the employees of private corporations providing medical care in correctional facilities under circumstances similar to those presented in this case are not entitled to assert qualified immunity." Tanner v. McMurray, 989 F.3d 860, 865 (10th Cir. 2021); accord, e.g., Montanez v. Price, 154 F.4th 127, 139 n.4 (3d Cir. 2025), cert. denied sub nom., Pennsylvania v. Montanez, No. 25-1073, ___ U.S. ___, 2026 WL 1718015 (June 15, 2026); Davis v. Buchanan Cnty., 11 F.4th 604, 622 (8th Cir. 2021); Sanchez v. Oliver, 995 F.3d 461, 472 (5th Cir. 2021); Estate of Clark v. Walker, 865 F.3d 544, 550-51 (7th Cir. 2017); McCullum v. Tepe, 693 F.3d 696, 697 (6th Cir. 2012); Tovilla v. Woodard, No. 5:20CT3199, 2021 WL 3863351, at *4 n.19 (E.D.N.C. Aug. 30, 2021) (unpublished).

applies." Id. (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). Further, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell, 436 U.S. at 690 n.55, such that "local government officials sued in their official capacities [also] are 'persons' under [Section] 1983," id. However, under Section 1983, a local government (and one of its employees in an official capacity) "may not be held liable 'unless action pursuant to official [local government] policy of some nature caused a constitutional tort.'" Collins, 503 U.S. at 121 (quoting Monell, 436 U.S. at 691). Put another way:

> [A] local government [or its employee in an official capacity] may not be sued under [Section] 1983 for an injury inflicted solely by [the government's] employees or agents. Instead, it is when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity [or its employee in an official capacity] is responsible under [Section] 1983.

Monell, 436 U.S. at 691 (emphasis added); see also Gordon v. Kidd, 971 F.2d 1087, 1097 (4th Cir. 1992) ("Liability of local governments and their officials sued in their official capacity under [Section] 1983 cannot be based on respondeat superior but arises only when city or county officials themselves, through an act establishing a policy or custom, cause the constitutional violation." (italics omitted) (citing Monell, 436 U.S. at 694)).

Coordinately, when (as here) a "[c]ounty contracts with [a private company] to provide health services to inmates at the [ c]ounty jail," Harrington v. Southern Health Partners, Inc., No. 1:21CV744, 2022 WL 3998750, at *6 (M.D.N.C. Sept. 1, 2022) (unpublished) (Biggs, J.), that company and its employees "act[] under color of state law for purposes of [Section] 1983 when fulfilling an obligation or responsibility of . . . the county," id. (citing West v. Atkins, 487 U.S. 42, 54-56 (1988)); accord, e.g., Davis v. Buchanan Cnty., 11 F.4th 604, 616 (8th Cir. 2021); Sanchez v. Oliver, 995 F.3d 461, 466 (5th Cir. 2021); Manning v. DVA Well Path Correct Care Solutions, No. 20CV8, 2021 WL 1146983, at *4 (M.D.N.C. Mar. 25, 2021) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Apr. 21, 2021) (Eagles, J.); see also DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999) (recognizing that non-state actors may face liability under Section 1983 when they "have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions"). But the Fourth Circuit has deemed Monell's (above-block-quoted) policy/custom "holding as equally applicable to the liability of private corporations." Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982). Accordingly, "a private corporation is liable under [Section] 1983 *only* when an official policy or custom of the corporation causes

the alleged deprivation of federal rights." Austin, 195 F.3d at 728 (underscoring added) (italics in original).

On that last point, Defendants have argued that Plaintiff "has not [presented] and cannot present evidence of a [Defendant] NaphCare[/McLane] policy that, in his case, denied him dental treatment. In fact, Plaintiff fails to identify any specific policy, or the absence thereof, that proximately caused his alleged dental injuries." (Docket Entry 32 at 13-14 (citing and parenthetically quoting Stokes v. Johnson, No. 3:16CV127, 2018 WL 310145, at *5 (W.D.N.C. Jan. 5, 2018) (unpublished), for proposition that "'failure to allege a specific policy or custom is fatal'"); see also id. at 13 ("'To state such a [Monell-based] claim, a plaintiff must identify the specific policy or custom in the [c]omplaint.'" (quoting Majeed v. Columbus Cnty. Bd. of Educ., No. 99-1341, 213 F.3d 631 (table), 2000 WL 524804, at *4 (4th Cir. May 2, 2000) (unpublished))).) To the extent that argument rests on Plaintiff's purported failure to allege in the Complaint that "an official policy or custom of [Defendant Naph Care/McLane] cause[d] the alleged deprivation of [his] federal rights," Austin, 195 F.3d at 728, the screening recommendation (adopted by Chief Judge Eagles) shows otherwise. (See Docket Entry 3 at 5 (deeming Complaint sufficient to state official capacity claims against Defendants Naph Care/McLane and Strickland in light of allegations that "Defendant Strickland allegedly told Plaintiff that he needed

to have his teeth cleaned in order to get relief from his symptoms," but "refused to clean them or to refer him for cleaning and stated that [Defendant] Naph Care[/McLane] does not clean teeth," and explaining that said allegations supported inference that Defendant Strickland "act[ed] according to [Defendant] Naph Care[/McLane's] policy"); see also id. at 4 (noting that Complaint alleged Defendant Strickland "told [Plaintiff] that he needed to have his teeth cleaned to address his gum issues, informed him that [Defendant] NaphCare[/McLane] did not clean teeth, told Plaintiff he would need to get that done after his incarceration, and refused to refer Plaintiff to any outside provider for further treatment even when he told her he might be incarcerated for some time" (citing Docket Entry 2 at 11-12, 27-28)).)

Defendants' argument on this front, however, also states that Plaintiff "has not [presented] and cannot present evidence of [such] a [Defendant] NaphCare[/McLane] policy that . . . denied him dental treatment." (Docket Entry 32 at 14 (emphasis added); see also id. ("Plaintiff cannot adduce any competent evidence of a widespread practice implemented by a [Defendant] NaphCare[/McLane] policymaker to deny dental treatment. There is no evidence in the record that [Plaintiff] was inappropriately or unjustifiably denied dental treatment pursuant to a [Defendant] NaphCare[/McLane] policy, or at all." (emphasis added)).) At the time of the filing of the instant Motion, the record did not contain "evidence of [the

above-described Defendant] NaphCare[/McLane] policy" (id. (emphasis added)), as Plaintiff did not verify the Complaint (see Docket Entry 2 at 22). See, e.g., Deque Sys. Inc. v. Browserstack, Inc., 177 F.4th 585, 599-600 (4th Cir. 2026) ("Once [the defendant] asserted at summary judgment that [the plaintiff] didn't have evidence to support its [claim], the burden shifted to [the plaintiff] to identify 'specific facts showing that there is a genuine issue for trial.' To do so, [the plaintiff] had to go beyond the allegations in the complaint and rely on affidavits, depositions, or other competent evidence at summary judgment." (internal citation omitted) (quoting Anderson, 477 U.S. at 256)). Plaintiff, however, provided such evidence via the Response, which he submitted "under penalty of perjury" (Docket Entry 34 at 14). (See id. at 11 ("[Defendant] NaphCare/[] McLane as the policy maker showed deliberate indifference by failing to allow cleaning teeth. In this case[, ] Plaintiff had a horrible case of periodontal disease which needed immediate attention which was denied to [him] due to the policy that would not support the cleaning of the teeth that would have relieved [him] from the excruciating pains . . . and from all teeth being extracted two years later.").)

The Reply does not contend that those averments by Plaintiff in the Response fail to raise a material question of fact as to whether "an official policy or custom of [Defendant Naph Care/McLane] cause[d] the alleged deprivation of [Plaintiff's]

federal rights," Austin, 195 F.3d at 728 (emphasis added). (See Docket Entry 35 at 1.) To the contrary, the Reply asserts only that "[t]he Court should not consider [the] Response given it is untimely and was filed after the established deadline for such a response." (Id.) In that regard, the Reply observes as follows:

> Local Rule 56.1(d) states that the opposing party may respond *within 30 days* after service of the summary judgment motion and brief. [The] Response was filed on February 4, 2026, over 30 days after Defendants' filing and service of the[ instant] Motion . . . and [supporting memorandum] on December 23, 2025.

(Id. (emphasis in original).)

Because Defendants served Plaintiff with the instant Motion and the supporting memorandum by mail on December 23, 2025 (see Docket Entry 31 at 3 (certifying service); Docket Entry 32 at 24 (same)), Plaintiff's time to respond lapsed **on January 26, 2026**, see M.D.N.C. LR 56.1(e) ("In a responsive brief the party having made the challenged claim may, within 30 days after service of the summary judgment motion and brief, file with the Court a response that sets out . . . the specific authenticated facts existing in the record or set forth in accompanying affidavits that would be sufficient to support a jury finding of the existence of the disputed elements."); see also Fed. R. Civ. P. 6(a)(1) ("When the period [specified in a local rule] is stated in days . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal

holiday."); Fed. R. Civ. P. 6(d) (providing that, upon service by mail, "3 days are added after the period would otherwise expire"). Plaintiff mailed the Response to the Clerk. (See Docket Entry 34-1 at 1 (reproducing front of envelope conveying Response).) Plaintiff dated the Response as signed on "January 18, 2026" (Docket Entry 34 at 14), but – even if the Court assumed he mailed it that day – "mailing does not constitute filing," Booker v. Armacell, LLC, No. 1:24CV1109, 2026 WL 622574,at *3 (M.D.N.C. Mar. 5, 2026) (unpublished) (Bragdon, J.), appeal filed, No. 26-1564 (4th Cir. May 5, 2026). Rather, "[b]ecause [Plaintiff] mailed the [Response], it was not filed until delivered," Booker, 2026 WL 622574, at *3 (citing Raymond v. Ameritech Corp., 442 F.3d 600, 604–05 (7th Cir. 2006), and McIntosh v. Antonio, 71 F.3d 29, 36–37 (1st Cir. 1995)); accord, e.g., Ross v. City of Charleston, No. 2:20CV670, 2021 WL 3088005, at *3 (S.D. W. Va. July 22, 2021) (unpublished); Gladden v. McHugh, No. 8:10CV3402, 2012 WL 474092, at *4 (D. Md. Feb. 13, 2012) (unpublished), aff'd, 476 F. App'x 415 (4th Cir. 2012), **on February 3, 2026** (see Docket Entry 34-1 at 1 (bearing date-stamp showing receipt by Clerk on February 3, 2026); see also Docket Entry 34 at 1 (same)).[16]

---

16 "Plaintiff does not receive the benefit of the prisoner mailbox rule for [the Response] because [it] does not certify the date on which he delivered it to prison authorities for mailing," Harrison v. Nicholson, No. 1:20CV244, 2021 WL 2144913, at *1 n.1 (W.D.N.C. May 26, 2021); accord, e.g., Henderson-El v. Maschner, 180 F.3d 984, 985–86 (8th Cir. 1999); Metcalf v. Julye, No. (continued...)

Under these circumstances, the Court should find that, after Defendants "assert[ed] that [the absence of a policy/custom of Defendant Naph Care/McLane which caused a constitutional violation] cannot be . . . genuinely disputed [and] support[ed] th[at] assertion by . . . showing that the [record] d[id] not establish the . . . presence of a genuine dispute," Fed. R. Civ. P. 56(c)(1), Plaintiff "failed to properly address [that] assertion of fact," Fed. R. Civ. P. 56(e), by failing to timely "assert that [the existence of such a policy/custom] . . . is genuinely disputed [and to timely] support th[at] assertion by . . . citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1). Plaintiff's failure in that regard leaves the Court these options:

> (1) give [Plaintiff] an opportunity to properly support or address the fact [at issue];
>
> (2) consider the fact [at issue] undisputed for purposes of the [instant M]otion;
>
> (3) grant summary judgment if the [instant M]otion and supporting materials – including the facts considered undisputed – show that [Defendants are] entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Acceding to Defendants' request (in the Reply) that the Court disregard the (late-filed) Response (and Plaintiff's averments

---

16(...continued)
9:23CV53, 2026 WL 845553, at *2 (E.D. Tex. Feb. 17, 2026) (unpublished), recommendation adopted, 2026 WL 840603 (E.D. Tex. Mar. 26, 2026) (unpublished). (See Docket Entry 34 at 14; see also Docket Entry 34-1 at 1 (displaying no post-mark).)

therein) (A) would amount to adoption of option (2), i.e., the Court "consider[ing] the fact [that the record lacks evidence of a policy/custom of Defendant Naph Care/McLane that caused a constitutional violation] undisputed for purposes of the [instant M]otion," Fed. R. Civ. P. 56(e)(2), and (B) would lead to the result described in option (3), i.e., "the grant[ing of] summary judgment [for Defendants Naph Care/McLane and Strickland on the official capacity claims against them]," Fed. R. Civ. P. 56(e)(3).

The following commentary to Federal Rule of Civil Procedure 56 strongly suggests that allowing consideration of the Response (consistent with option (1) above) represents the better course:

> Subdivision (e) [of Federal Rule of Civil Procedure 56] addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by [Federal] Rule [of Civil Procedure] 56(c). . . . Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. <u>In many circumstances this opportunity will be the court's preferred first step.</u>
>
> . . . .
>
> . . . The choice among possible orders should be designed to <u>encourage proper presentation of the record</u>.

Fed. R. Civ. P. 56 advisory committee's notes, 2010 Amendment, Subdivision (e) (emphasis added); <u>see also</u> <u>Grimes v. District of Columbia</u>, 794 F.3d 83, 92 (D.C. Cir. 2015) (identifying above-quoted commentary and "implicit preference for judgments on the merits" as guideposts for addressing situation where "[t]he

record does not suggest that [the plaintiff] wishes to abandon her claims, but [the record] also appears to lack evidence needed to carry them over the summary judgment threshold"); Sinclair v. Mobile 360, Inc., 417 F. App'x 235, 241 n.13 (4th Cir. 2011) (describing "2010 version of [Federal] Rule [of Civil Procedure] 56" as "helpful to" party facing summary judgment motion that "failed to properly support or address an assertion of fact," (A) because Subdivision (e) "recognizes that the court may afford the party an opportunity to do so, and . . . that orders other than an award of summary judgment to the opposing party may be appropriate," and (B) because, "[s]ignificantly, the Advisory Committee recognized that 'the choice among possible orders should be designed to encourage proper presentation of the record'" (internal brackets, citation, and some quotation marks omitted)).

Plainly stated, when a plaintiff neglects to timely support its factual assertions in response to a summary judgment motion, "taking [the defendant's version of the] facts as admitted – particularly dispositive facts – is not the 'preferred first step.'" Lexington Ins. Co. v. Paddock Swimming Pool Co., 532 F. Supp. 3d 1, 4 n.2 (D.D.C. 2021) (quoting Grimes, 794 F.3d at 92); accord Panarello v. Zinke, 254 F. Supp. 3d 85, 97 (D.D.C. 2017), aff'd sub nom., Panarello v. Bernhardt, 788 F. App'x 18 (D.C. Cir. 2019). Instead, persuasive authority favors the alternative of "giving the [plaintiff] an opportunity to support

[its assertions of] fact [to] '"minimize[] the chance of an unjust result based on an inadequate record."'" Kam-O'Donoghue v. Tully, Civ. Action No. 16-11054, 2018 WL 2739930, at *1 (D. Mass. Mar. 16, 2018) (unpublished) (quoting Parks v. Blanchette, No. 3:09CV604, 2015 WL 1970526, at *1 (D. Conn. May 1, 2015) (unpublished), in turn parenthetically quoting 11 James William Moore et al., Moore's Federal Practice § 56.99[2][a] (3d ed. 2015)); see also Huffman v. Davey Tree Expert Co., No. CV 418-184, 2024 WL 200930, at *3 (S.D. Ga. Jan. 18, 2024) (unpublished) (citing (1) Advisory Committee's Note on 2010 Amendment to Federal Rule of Civil Procedure 56, (2) "preference for summary judgment determinations based on the merits rather than technicalities," and (3) "overriding goal of securing the just determination of every action and proceeding" in allowing the plaintiff further "opportunity to address various facts presented in the partial summary judgment motions").

Still, "invoking [Federal] Rule [of Civil Procedure] 56(e)(1) is a matter of this [C]ourt's discretion." Peronis v. United States, No. 2:16CV1389, 2018 WL 4740170, at *7 (W.D. Pa. Oct. 2, 2018) (unpublished). In deciding whether to exercise that discretion to invoke that rule provision (and thus to consider Plaintiff's averments in the Response in opposition to the instant Motion), the Court may note that "other courts have declined to afford th[e] opportunity [to belatedly substantiate a factual assertion contesting summary judgment] in cases of bad faith or in

protracted litigation where [such] further opportunity to address summary judgment arguments would lead to even further delay in the litigation process." Id. (emphasis added) (citing cases).

Here, on the issue of delay (and as previously documented), Plaintiff filed the Response only six business days late. The "fil[ing of the Response] relatively shortly after [the deadline means that the delay] . . . has not interfered with the [C]ourt's decisional process regarding [the instant M]otion," Wilson v. Deutsche Bank & Tr. Co. Ams., No. 3:18CV854, 2020 WL 4559822, at *3 (N.D. Tex. Apr. 28, 2020) (unpublished); see also Peronis, 2018 WL 4740170, at *9 (citing fact that court saw "no reason why [untimely] filing would have any impact on efficiency in th[e] case" in accepting said filing). Regarding bad faith, the pertinent portion of the Response "is not a wholesale change in position." Peronis, 2018 WL 4740170, at *9. "The fact that [P]laintiff[] . . . [sh]ould have been more [timely] with respect to [filing the Response] does not change [his] theory of the case. Put simply, [Defendants] ha[ve] been on notice of [Plaintiff's] claims since the beginning." Id. Given the absence (at least at this point) of any other basis to "satisf[y the Court] that [the Response] . . . [wa]s submitted in bad faith or solely for delay," Fed. R. Civ. P. 56(h), "[t]here is no justification to find bad faith," Peronis, 2018 WL 4740170, at *9, and therefore no reason to

"decline[] to afford [Plaintiff] this opportunity [to properly support this claim]," id. at *7.[17]

In sum, like other courts confronted with similar scenarios:

> [T]he [C]ourt [should] find[] in its discretion that permitting [consideration of the Response] is warranted. . . . [T]he purpose of summary judgment is to truly assess whether there is a genuine need for trial. And, under [Federal] Rule [of Civil Procedure] 56(e), it is ordinarily the preferred first step to allow a party [who failed to properly support or address the facts at issue a chance] to properly support or address the fact[s] at issue.

Id.; see also Anderson v. Bristol, Inc., 936 F. Supp. 2d 1039, 1047 (S.D. Iowa 2013) ("find[ing the p]laintiff's reasons for not complying with [duty to cite evidence to support factual assertions] in the first instance uncompelling," but, in interest of obtaining "most complete record possible," opting to "consider [her] amended filings in ruling on [the d]efendants' [summary judgment] motions"). With the Response accepted as a part of the record, the Court (A) should conclude (for reasons previously discussed) that Plaintiff's averments therein raise a material factual dispute as to his official capacity claims against Defendants Naph Care/McLane and Strickland, and thus (B) should not enter summary judgment in their favor on those claims.

---

17 "If [the Court later becomes] satisfied that [the Response] . . . [wa]s submitted in bad faith or solely for delay," Fed. R. Civ. P. 56(h), Plaintiff "may [then] be held in contempt or subjected to other appropriate sanctions," id.

CONCLUSION

Defendants have not established entitlement to judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 31) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 14, 2026